We'll move on to the second case, to your argument in today that Space Data Corporation v. Hosie Rice, case number 21-15977. Eric Leibler, LLP Good morning, Your Honor. I'm Eric Leibler with Stinson LLP, representing Space Data Corporation. The District Court's fundamental error in this case was to assert that Judge Robinson, who was the arbitrator, Sue Robinson, a district judge of over 30 years in Delaware, since retired and now with JAMS, declined arbitral jurisdiction over post-hearing issues that came up after the actual merits hearing of the arbitration. Judge Robinson never declined jurisdiction. And I want to walk through pieces of the record in which the record shows the exact opposite of that. The issue came up for the first time on March 18th, when, after Space Data had discovered that Hosie Rice had not, in fact, paid experts that Hosie Rice, during the arbitration, claimed to have paid. And we wrote a letter to the arbitrator articulating that point. How did she respond? She responded the next day, not by saying, oh, wait a minute, there's a final order. We have no jurisdiction over this. Instead, she said, I want to hear from Hosie Rice what their response is. What did Hosie Rice respond? Hosie Rice responded, oh, we confirm that the experts have already been paid. In other words, Space Data, you're wrong on the merits here with respect to your claim that arose post-arbitration. That representation on Hosie Rice's part was false. And that spurred a then five-month sequence of representations from Hosie Rice about having paid the expert, during which they lied repeatedly to the arbitrator. Can I back up? Because I take your point. I understand that there's at least some serious evidence here that... Oh, three minutes for rebuttal, I apologize. Sure, that's fine. But you said this was first raised in March of 2020. In February of 2020, the arbitrator did say that the award was deemed final, though, right? Here's what happened. So in February 18th of 2020, the arbitrator... Well, just prior to that, on February 11th, the JAMS administrator, a woman named Liz Magana, wrote us a note saying, are there any further issues? And the interim award had held jurisdiction open in case further issues came up. And I... That was the award issued in January. That's correct. That's correct. And I responded, hey, we're working out one further issue with Hosie Rice's counsel. We think we'll get it done, but we're not done yet. And that was based on representations from Hosie Rice's counsel to me. Over the next month, I followed up 11 times with Hosie Rice's counsel about the expert fees, getting, you know, various responses about how they're going to be paid, they will be paid, they should be paid. Okay. I understand that that led into your March 18th thing, but go back to February 18th. Judge Robinson wrote a final award and signed it. Okay. And sent that to Liz Magana. She rendered the award. Okay. She did not issue the award at that time. So the parties did not see it. Okay. And that's the distinction between having rendered an award and having issued award under Functus Officio and the JAMS rules. Okay. Okay. So your argument here, but what if it had been issued? So let's just hypothetically, what if it had been issued, there wasn't a debate, both parties had received the award in February of 2020. If it's issued, then there may be Functus Officio. And I think JAMS would be right under JAMS rule 19. Okay. So your argument here hinges on the fact that it was signed, but not actually, in your opinion, issued to the parties. Correct. Although with respect, Your Honor, that's not my opinion. That's an undisputed fact. Well, I understand the facts are undisputed. Well, we'll see. But the legal impact, I mean, you say that has a fundamental change on the legal impact. I do. And it's under both the law of Functus Officio and under JAMS rule 19-I, which Alicia Jantz eventually issues, in which she cites rule 19-I as saying, oh, once it's rendered, there's no jurisdiction. Rule 19-I doesn't say that. But how much leeway do we give them? I mean, do you have any cases where a court has made a distinction that you're trying to make, that rendering and issuing are two different things? Some of the Functus Officio cases do that. They all say it's got to be issued. And the reason for that is that the whole doctrine of Functus Officio is to avoid the harm of an arbitrator issuing a ruling, and then the party's going back to the arbitrator and saying, oh, you need to do something different. But they're all premised on the parties having actually seen the final award. Now, if we were to agree with you on that, is that we — should we rule on Functus Officio outright, or would we remand that back to the district court? Because the district court did not address that argument, correct? Correct. It did not. I think — well, let me go back to my main line here, because I think I'll get to part of this point with the Court's leave in a minute, because I want to do talk about what Judge Robinson said about asserting her own jurisdiction. I think ultimately we probably don't reach the Functus Officio question. So what happened then, after this sequence of misrepresentations on Hosea Rice's part, the Court, Judge Robinson in the arbitration, issued its order on May 26th. And in that May 26th order, she explicitly found that she had jurisdiction over post-hearing issues. And this is a quote from her. The failure to pay NERA is part of the dispute between Space Data and Hosea Rice and is properly before the arbitrator. And she went on to say the JAMS rules say that jurisdictional and arbitral disputes shall be submitted to and ruled on by the arbitrator. That's Judge Robinson. It's not Alicia Jansh. It's not Judge White. Okay? And she said consideration of this dispute is appropriate and consistent with the rules. So we have a clear record that Judge Robinson accepted jurisdiction over the post-hearing issues, knowing all the while that her order had been rendered but not issued. So given that we have a conclusive statement from Judge Robinson on the point, I don't think we have to go further than that. Well, but hold on. How does that fit in? Because, I mean, then in August, after further briefing, the arbitrator says, basically, I was wrong or my perception was wrong. No, no, no, no, no, no, no. What happens in August, okay, is that Alicia Jansh, who is an administrative lawyer at JAMS, okay, issues the one-paragraph order that's at 2ER-323, okay? Judge Robinson has not copied on that order, okay? There's not a word in the record that suggests that Judge Robinson saw it, signed it, had anything to do with the analysis on it, okay? And the analysis in that order is materially inconsistent with Judge Robinson's analysis, who was the arbitrator. So we have a situation, Your Honor, in which Alicia Jansh, who is an administrative lawyer with JAMS, and she's actually, at that point, was in her third year out of law school, okay, is in direct conflict with Sue Robinson, in whom is vested the arbitral authority. So we have a conflict between the arbitral authority, okay, the arbitral organization, and the actual arbitrator. Yes, Your Honor. Counsel, I want to point out, in the August order, I believe this is from JAMS, they talk about the award was already, the final award was already rendered. Is that language important in your distinction here between having been rendered and having been issued? Yes, it was. We agreed that the final award was rendered in February, but it was not issued in February, and Judge Robinson was perfectly well aware that it had been rendered and not issued. And this is precisely what Judge Robinson addressed in the July 10th sanction hearing at ER-113, in which she said... Well, I thought part of the reason, Counsel, it wasn't issued as opposed to having been rendered was there was some dispute about payment of some fees. That's a reason that it wasn't issued, that's true. But the JAMS rules do not address the situation about whether or not arbitral jurisdiction continues in a situation where the award is rendered but not yet issued. And Judge Robinson... It's silent on that point. The JAMS rules are silent on that point. I think more or less silent, they don't address that issue. What the JAMS rules do say is that jurisdiction and arbitrability disputes shall be submitted to the arbitrator, and that's either in JAMS Rule 8b or 8c. So we contend, Your Honor, that it's up to Judge Robinson to make the decision, not JAMS, Judge Robinson, to make the decision about whether or not she has jurisdiction in the interim period when an award has been rendered and not yet issued. Okay? So it's sort of between JAMS Rule 8c and the sanctions hearing that Judge Robinson conducted on July 10th. And in that hearing, she was actually very clear about it. She said, look, I've read the JAMS rules. And remember, by that point, Hosie Rice had objected to jurisdiction. Okay? And what Judge Robinson said during that hearing was, you've argued that there's a final order, and because there's a final order, I have no authority to do anything. And then she said, I've analyzed the JAMS rules. I do not think that Liz Magana, the JAMS administrator, having it in her hands, makes it a final order. But clearly, no final order has issued. That's Judge Robinson's language from II-ER-113. But that was in — wait, when did that happen? July 10th, Your Honor. But then we have this August ruling. Did Arbitrator Robinson do anything after this August? No. She said, I'll get back to you as soon as I can, and then we get the one paragraph from Janch out of the blue. Janch did not ask for briefing from the parties. No one knew that Janch was involved. It was literally a lightning bolt out of the blue that ended the case, because she said there's no jurisdiction. So at that — Then you go back to Robinson and ask her to confirm this. I don't know if I can. What happened was that we were trying to figure out what to do. Hosea Rice then paid the fees, and JAMS terminated the arbitration. Well, but how could JAMS terminate the arbitration if the arbitrator wasn't on board with that? That's what's confusing. Because that's exactly what — that's exactly what Alicia Janch's order ends up doing, Your Honor. That's why we're here. We don't think that was appropriate for her to do that. Now, look, if Judge Robinson had signed the August 14th order, or if she were copied on it, or if there were any record indication that she had anything to do with it, we're done, okay? We wouldn't be here. But there's not one shred of record evidence to demonstrate that she had anything to do with that order. Let me back up, because you say that if she had signed that order in August of 2020 — okay, so you would agree that, in your opinion, that would have been the wrong decision by Robinson, because your opinion is it was — it was only rendered, it wasn't issued. But — But if she had said that that was enough for no jurisdiction, you wouldn't be here. Is that what you're saying? Correct. Because it's up to Judge Robinson to make that decision. And even though I might have disagreed with her on the merits of the jurisdictional issue, she is the one that has the right to make that decision. And if she makes that merits decision against me in arbitration, I don't have a merits appeal from that. The issue here is that we have a direct conflict between six months of Judge Robinson's record in which she asserts jurisdiction and a one-off missive from a third-year lawyer at JAMS saying no jurisdiction all the way back to February. And remember, Jancha's order takes no account of any of the things that happened along the way, including, by the way, Hosie Rice consenting to jurisdiction affirmatively at least three times during the July 10th sanctions. Well, but that was a limited consent. I mean — Well, it's limited, but I don't think jurisdiction works that way, Judge. No, it absolutely does. Well — I mean, a district court can retain jurisdiction for, you know, purposes of determining fees. That doesn't prevent the substance of the appeal from coming out. But it wasn't just fees, right? Hosie Rice's position was we consent to jurisdiction as long as you agree with our specific remedy here, okay, limiting it to the only If it's not the remedy we like, then there's no jurisdiction. Okay. That's — that, I think, is an inappropriate construction of jurisdictional jurisprudence. You asked for three minutes for a rebuttal. Thank you for waiting. Very good. Thank you, counsel. So, counsel, can I — my question has been about this case, or my understanding, has been a little bit reframed by argument, and maybe it would help to just hone in. I do — you know, I get that there's some complications here, but it seems like the argument is much narrower than I'd understood it before, which is that it's the fact that Robinson never signed the August 2020 order, or never rendered a final statement that it was — that the arbitration was final. Can you address that? Surely, Your Honor. But good morning, Judge Nelson. Yes. Good morning, Judge Morris. And may it please the Court, I'm Joe McMonagle. I'm appearing here with my partners, John Sullivan and David McMonagle. All of us were involved in the underlying case. And I think that one clarification I would like to make is that Judge Robinson was not a JAMS neutral. Judge — JAMS was the provider that administered the arbitration. Judge Robinson was an independent arbitrator that was selected to serve. So, a slight distinction. And — Well, but wasn't she the arbitrator for purposes of deciding the case? Yes, she was. But the — just as background, that, I think, understands probably a little bit of the confusion that occurred, that she was not — Why didn't Robinson sign an order after July of 2020, making clear that she didn't have — I mean, you agreed that in February of 2020, Robinson issued an order that suggested she might have jurisdiction. So, in — so, if I could back up, Your Honor, and try to answer your question. In January, she entered the interim award. Right. In February, there was — Is it final? Or, well — She left one issue that was to be decided, and that was, did the — did Hosie Rice incur fees and costs in excess of $4 million? That was, you know, footnote 8. That was what the determination was. And so, we shouldn't confuse that issue with the issue of the NERA payment. Okay. But I'm with you as of February. But then in May, she does — Judge Robinson or Arbitrator Robinson does seem to suggest that she might have jurisdiction over more issues than just what she left open. But I think the record is pretty clear, Your Honor. She goes back and forth with regard to whether or not she does — Fair enough. But my point is, it's on the table in May of 2020. Right. But before that — And then Robinson never says anything. Before that time, Your Honor, there is the back and forth as to whether or not there's any issue with regard to whether or not Mr. — the Hosie Rice firm met the threshold of $4 million because they had alleged that they had $5.3 million and then over a million dollars in costs. There was no issue as to that. And that was confirmed by space data. So that issue with correspondence between Mr. Liebler, us, and Ms. Magana representing JAMS to clear that up. Once that was cleared up, Judge Robinson issued her final award. And that was on 2-18. And if you go to the JAMS rules — Hold on. Again, the final award was final as to most issues, but it still left open some issues. No issues were open, Your Honor. The one issue that she left open was the issue of whether or not Hosie Rice met the threshold of $4 million. That was the issue that was open, footnote 8 in her interim decision. Then once that was cleared up — Once that was cleared up, Your Honor — Counsel. Sorry? In May, though, of 2020, Judge Robinson issues an order that in part sanctions Hosie Rice for false statements about the alleged advancement of extra costs. How did she have authority to issue that sanction? Well, Your Honor, it's our position that she didn't have authority to do so. And if I could get the Rule 19i to answer your question, it's very specific. Then we have a hearing in July. We have a hearing in July after that sanctions issue. But if I could just take you to 19i, it says that after the award has been rendered and provided the parties have complied with Rule 26, fees, okay, the award shall be issued by serving copies on the parties. Shall be issued. So there's no — there's no discretion on the part of the arbitrator. Once the arbitrator renders the decision and then the fees — it's determined that the fees have been paid, then it's a final award. And that's why the — Judge Robinson rules on February 18. Now, to answer your question, Judge Morris, there is this issue of NERA where the other side presents it as an issue that needs to be resolved. And our view is that that's not an issue that the arbitrator needed to be resolved. She thought so. She went down the road of issuing a May 26 order that we don't believe was proper, and she didn't have jurisdiction to do so. I understand you think she didn't have jurisdiction. What's confusing is she did it. She did it on May 26, suggests that the February order wasn't final, or at least there might have been a question about whether it's final. And then that's the last official notice we hear from Judge Robinson. We get — August of 2020, we get a statement from the administrative lawyer. Why didn't Robinson issue the August 2020 order? Because, Your Honor, it's — if you look at the district court's decision, the district court finds that it's consistent with the record — That's not my question, Counsel. My question is, why didn't Judge Robinson issue the August 2020? If Judge Robinson had issued that in August 2020, we just heard that we wouldn't be here. Why didn't that happen? I don't know, Your Honor. But that's a problem. Well, it isn't, Your Honor. If it's a problem, then you have to look at what the NERA's obligation is the part of Hosie Rice and has nothing to do with space data. At the end of the day, Judge Robinson figures that out. Counsel, we're not getting into the underlying dispute here. The question is, does the arbitrator have jurisdiction? It's not clear, based on what I've heard today, that this was actually final. Because the arbitrator seemed to open up the door in May. And never closed the door. Show me where Judge Robinson closed the door after May of 2020. With the JAMS letter, the door was closed, Your Honor. But why can that happen with the JAMS order when — I mean, the arbitrator had been doing everything up till now. Your Honor, I can't — I'm not privy to, you know, what Judge Robinson was thinking. Go back and ask for something from — I mean, this is unusual, what happened in August 2020. Final order, Your Honor. And why didn't the other side move to correct the order, the final order? Well, I'm not sure we do have a final order when the judge — after the supposed final — well, do you agree that the final order wasn't issued, that it was just rendered in February of 2020? But I do not believe that issuance — that you can go back and modify the order once rendered, because it's specific in the JAMS rules that the only, you know, condition is whether or not the fees are paid. Once the fees are paid, then the final award is issued. So rendering takes care of the responsibility of the arbitrator, Your Honor, under the rules. And the only condition is to take care of the fees. And once the fees are taken care of, the final award is issued. And there's no provision to allow for a party to go back and challenge — This is just an odd situation where the arbitrator, Judge Robinson, apparently in May, does suggest, hey, I want to revisit this ruling, determine whether it's final. I agree it didn't make a final determination. I think everybody agrees it didn't make a final determination in May. And then she doesn't actually close the loop. This administrative lawyer closes the loop in August. I mean, is there — are you arguing that the administrative lawyer was acting with authority from Judge Robinson? Absolutely. No question about it. Because under the JAMS rules, the only thing that stands in the way of a final award is the fees to be paid. So JAMS is acting on behalf of the arbitrator. And that's what the district court finds, that the district — that JAMS and the arbitrator, Judge Robinson, are on the same page with regard to closing this matter. And, you know, I'm probably speculating, but it's — they probably realized that this was an issue between Hosie Rice and Nira as to whether or not there was a fee owed. Right. No, I understand. But what's strange is — I mean, is this normally — this is not my understanding of how arbitrations are finally closed with just an administrative lawyer issuing a ruling like this. Maybe I'm wrong about that. But I would expect something final from Judge Robinson. Where is the authority to reopen based upon the JAMS rules that are the ones that are applicable here? Well, you may be right or you may be wrong. I mean, Judge Robinson, as I interpret it, in May said, I'm not sure what to do here right now. Now, one view of this is she went back, figured it out, said, OK, we're done. That's exactly it. And I understand that's your view. But then why didn't Judge Robinson do that? That's what's strange. Your Honor, it's pretty clear. I mean, it's not a question of whether or not Judge Robinson, you know, was certain that she had jurisdiction. I think it's pretty clear. And actually, the district court finds that she did not have jurisdiction based upon the evidence and reviewing the evidence. So let's say that Judge Robinson had come out the other way. If Judge Robinson said, you know what, I don't think it was final. And because it wasn't final, this issue has come up. I still have jurisdiction over it. And she issued an order. We would be here, Your Honor, challenging that. And you would have said she didn't have authority to do that. Correct. I — OK. We would be here to raise the account, Your Honor, if that occurred. Because we had a final decision. You look at what the arbitration was about. It was about — Hosea Rice thought it was entitled to fees. Space Data said, no, you're not entitled to any fees. And in fact, you need to be disgorged of the fees you've already received. That was the arbitration. OK? That's what we arbitrated. And if you look at the decision, one issue for the arbitrator was, OK, $4 million for sure to Space Data, $4 million to Hosea Rice, so long as Hosea Rice was owed $4 million. I understand that that would have been your argument in that situation. I'm just — my concern that I've got to narrow in on is whether the final determination was made. Because if the final determination was made by Judge Robinson, you know, if she went the other way, then, yes, you'd be up here. What I heard from counsel is if Judge Robinson issued the order that she did, they wouldn't be up here. So the whole question really boils down to, is this actually a final arbitral award? Well, the final decision comes from Judge Robinson. It's the 218 that served in August of 2020. Now, Your Honor, it would — Your argument is that the August 2020 is a ministerial act that finalizes the February 2020 order. Correct. Because it was rendered. And there's no authority whatsoever. They haven't cited you a case that allows for this circumstance where they could — an arbitrator could — Your argument would be a lot stronger if there weren't some ambivalent language in May of 2020. Your Honor, there's always, you know — we're here because it's not perfect, okay? And I understand that it would have been — it probably would have been better, but it's still not the case that they're allowed to go forward and challenge a decision that was rendered on the totality of the matters before the arbitrator, which was the fees. And then this issue of NERA came up later, that who owes NERA? And very clearly — No, counsel, I think we've got your argument on that. I understand that. We're looking at a very technical issue here, and we're just trying to make sense of it. Okay. Any other questions, Judge Morris? Any other questions for me? All right. Counsel, thank you. Okay. We've got rebuttal. Yes. Very good, Your Honor. Thank you. Your Honor is correct to assert that Judge Robinson in May said that she had jurisdiction. But I refer to the court to the July 10th transcript, in which she was likewise extremely clear. She said, but clearly no final order has issued. So it's not just May that she said that. It's also in July, after Hosie Rice had formally raised a jurisdiction. But that was only on the record. There was never an order to that effect. Correct. But it was from the bench, and it was pretty darn clear. I know. I hear you. But look, judges all the time can say things from the bench. And so if there had been a subsequent order revising that, then I'd say, okay, Robinson changed. Well, but the question — I think the better question is, can a statement from the bench amend a written order from February? Well, certainly her written order from May does that, right? So I've got May and July that are subsequent to the February 18th final order that was rendered but not yet issued. Then I wanted to follow up on the question you asked at the beginning of my argument, Judge, because we're talking about jurisdiction, and you said, hey, jurisdiction could be limited. Okay. Let me assume for the moment that you're right, okay, that jurisdiction is limited to enforcing the order for Jantz and an attorney fee award my way in the amount of $75,000. Jantz's subsequent order torpedoed that jurisdiction, too. Okay? At this point, we're under order from the district judge to pay these guys $40,000 in attorney's fees their way. Okay? But the fact of the matter is that it was absolutely clear that Hosie Rice consented to jurisdiction at the July 10th hearing to the extent of, at a minimum, okay, enforcing that NERIA get paid and, B, paying my attorney's fees. And then when Jantz's order comes out of the blue a month later, all of that is now gone. So even on the limited jurisdiction argument that you articulated, Your Honor, I still think we win. Okay. Thank you. Judge Morris, do you have any further questions? Thank you. Thank you, Your Honor. Thank you. This case is now submitted, and we're concluded for the arguments today. Thank you. All rise. Court for this session stands adjourned.
judges: BYBEE, NELSON, Morris